IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

**ANTHONY BROCKWELL**
*Individually, and on behalf of himself
and others similarly situated,*

Plaintiff,

v.                                No. _____

**VTRIPS, LLC, VACATION RENTAL
PROS PROPERTY MANAGEMENT, LLC**
and **STEVE MILO,** *Individually,*

**FLSA Multi-Plaintiff Action
JURY DEMANDED**

Defendants

## ORIGINAL FLSA MULTI-PLAINTIFF ACTION COMPLAINT

Plaintiff, Anthony Brockwell, ("Plaintiff"), individually, and on behalf of himself and all other similarly situated current and former employees classified as property managers, file this Original Multi-Plaintiff Action Complaint against VTrips, LLC. Vacation Rental Pros Property Management, LLC and Steve Milo, individually ("Defendants") and alleges as follows:

### I.     INTRODUCTION

1. This lawsuit is brought against Defendants as a multi-plaintiff action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* to recover unpaid overtime compensation and other damages for Plaintiff and other similarly situated current and former employees classified as property managers

2. Defendants failed to pay Plaintiff and those similarly situated at the applicable FLSA overtime rates of pay within weekly pay periods during all times material to this action.

1

## II. JURISDICTION AND VENUE

3. The FLSA authorizes court actions by private parties to recover damages for violations of the FLSA's wage and hour provisions. Jurisdiction over Plaintiff's FLSA claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff was employed by and performed work for Defendants in this district during all times material to this action. In addition, Defendants have conducted business in this district during all times material to this Complaint.

## III. PARTIES

5. Defendant Vtrips, LLC is a limited liability company, and owned and managed by Defendant Steve Milo, with its principal offices and headquarters located at 200 Executive Way (Suite 200), Ponte Vedra, Florida 32082.

6. Defendant Vacation Rental Pros Property Management, LLC is a subsidiary of Vtrips, LLC, and owned and managed by Defendant Steve Milo, with its principal offices and headquarters located at 200 Executive Way (Suite 200), Ponte Vedra, Florida 32082.

7. Defendant Steve Milo is the owner and manager of Vtrips, LLC and Vacation Rental Pros Property Management, LLC during all times material to this action. (The pay and compensation plans, policies and practices of Vtrips. LLC and Vacation Rental Pros Property Management, LLC were established and administered by and under the direction and control of Defendant Steve Milo during all times material to this action.)

8. Plaintiff Anthony Brockwell was employed by and performed job duties for Defendants within this district during all times material herein. (Plaintiff Brockwell's Consent to Join this Multi-Plaintiff Action is attached hereto as Exhibit A.)

2

9. Defendants are joint employers of Plaintiffs and those similarly situated during all times material to this action.

10. Defendants are an integrated enterprise as that term is defined by the FLSA because their related activities, which are performed through unified operations of a common control, are for a common business purpose. (They operated out of the same offices under the management and control of Defendant Steve Milo in Point Vedra, Florida.)

## IV. FACTUAL ALLEGATIONS

11. Defendants rent and manage home, apartments, condos, cabins and other structures for owners of such properties in Tennessee, Florida, Alabama, Georgia, Hawaii, Maryland, New Mexico, North Carolina, South Carolina and Texas. Plaintiff was employed by and performed job duties for Defendants in Sevier County, Tennessee within weekly pay periods during all times material herein.

12. Defendants have been the "employer" of Plaintiff and those similarly situated within the meaning of 29 U.S.C. § 203(d), during all times relevant to this Multi-Plaintiff Action Complaint.

13. Plaintiff and all others similarly situated have been current or former employees (hereinafter "potential plaintiffs") of Defendant.

14. Plaintiffs and potential plaintiffs have been "employees" of Defendants as defined by Section 203(e)(1) of the FLSA, and performed work for Defendant within the territory of the United States within three (3) years preceding the filing of this lawsuit.

15. At all times relevant, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce as defined by Section 203(s)(1) of the FLSA, with annual revenues in excess of $500,000.00.

3

16. At all times relevant, Defendants have been subject to the pay requirements of the FLSA because they are an enterprise engaged in interstate commerce and their employees are engaged in interstate commerce.

17. Plaintiff and potential plaintiffs performed work for Defendants in excess of 40 hours per week within weekly pay periods during all times material to this action.

18. Defendants established, implemented and administered the pay and compensation plans, policies and practices related to Plaintiff and potential plaintiffs under the direction and control of Defendant Steve Milo during all time material herein.

19. Defendants were responsible for classifying their employees either as exempt or non-exempt for overtime compensation.

20. Defendants classified Plaintiff and potential plaintiffs as salary exempt "Property Managers" and based their salary on a forty (40) hour work week even though they were required to work well over forty (40) hours per week within weekly pay periods during all times material to this action.

21. However, a review of the job duties and responsibilities of Plaintiff and potential plaintiffs show they should have been classified as non-exempt employees under federal law and, as a consequence, should have been paid overtime compensation for all hours worked over forty (40) per week.

22. More specifically, the job duties of Plaintiff and potential plaintiffs demonstrate they should have been classified as non-exempt employees under the FLSA because:

    a. They did not exercise discretion or independent judgment with respect to matters of significance or in performing their primary duties;

    b. They did not have the authority to formulate, affect, interpret, or implement

4

Case 3:23-cv-00277-JRG-JEM Document 1 Filed 08/07/23 Page 4 of 14 PageID #: 4

management policies or operating practices;

c. They did not carry out major assignments in conducting the operations of Defendant's business.

d. They did not have the authority to commit the employer in matters that had any significant financial impact;

e. They did not have the authority to waive or deviate from established policies and procedures without Defendant's prior approval;

f. They did not have the authority to negotiate and bind the Defendant on significant matters;

g. They did not provide consultation or expert advice to management;

h. They were not involved in planning long or short-term business objectives of Defendant;

i. They did not investigate or resolve matters of significance on behalf of management;

j. They were not assigned to perform any office-related job duties;

k. They did not represent Defendant in handling complaints, arbitrating disputes, or resolving grievances;

l. They did not hire or fire employees nor did they supervise any employee; and

m. They did not perform any job duties related to Defendant's business operations of finance, tax, accounting, insurance, quality control, purchasing, procurement, human resources, human resources, labor relations, computer network, internet, database administration, or legal and regulatory compliance.

23. More than 98 percent of the primary duty of Plaintiff and potential plaintiffs were of a non-office nature.

24. The daily job duties of Plaintiff and potential plaintiffs consisted of preventive maintenance, inspecting rental properties for any repairs needed and then making minor repairs, such as unstopping clogged drainage pipes, changing out light bulbs, repairing broken windows, changing out locks to the property, etc.

25. If a rental property required a repair that Plaintiffs and class members were unable to make or required considerable time to repair, they were directed to contact Defendants' maintenance department to make the repair.

26. If such a repair could not could not be handled by Defendants' maintenance crews, Plaintiff and potential plaintiffs were required to notify their respective owner relations representative who, in turn, would coordinate such major repair with the rental owner.

27. Once a rental owner approved the major repair and the cost of such repair, Defendant's owner relations representative would notify Plaintiff and potential plaintiffs of the approval.

28. Plaintiffs and potential plaintiffs then would refer to an approved list of Defendant's preferred vendors to make the repair. (The preferred list of preferred vendors was prepared solely by Defendants.)

29. Only in the instance of an emergency, or when guests occupied a rental property, were Plaintiff and potential plaintiffs permitted to make a decision to coordinate a repair on their own, which merely consisted of referring to Defendant's preferred vendors and coordinating the repair or replacement in keeping with specific and strict guidelines prepared by Defendants.

30. Plaintiffs and potential plaintiffs had no offices in which they worked. They only were in a Defendants' office for less than an hour per week (on the average) to attend meetings

6

conducted by their superiors. (They typically spent no more than one-half an hour in such meetings per week - less than 2 percent of their work time. Even then, they made no decisions related to the Defendant's business operations.)

31. Essentially and effectively, Plaintiff's and potential plaintiffs' job duties were analogous to those of a non-exempt quality control/maintenance employee in a manufacturing facility whose job duties would consist of preventive maintenance, inspecting equipment for any repairs and making minor repairs to such equipment. (See *Fowler v. OSP Prevention Group, Inc.*, No. 12227 (11th Cir 2022) for a similar analogy.)

32. The primary job activities of Plaintiff and potential plaintiffs simply do not directly relate to the management or the general business operations of Defendants.

33. Not only did Defendants fail to meet the "duties" test for an overtime compensation exemption related to Plaintiff and potential plaintiffs, they also failed to meet the "salaried" test for an overtime compensation exemption related to them - during all times material to this action.

34. Specifically, Defendants had a common plan, policy and practice of deducting ("docking") Plaintiff' and potential plaintiffs' salary if they were absent from work during any weekly work period - once their "Paid time off" and "sick time" credits were exhausted or not used for such absences.

35. Defendants also had a common plan, policy and practice of failing to pay Plaintiff and potential plaintiffs the applicable FLSA overtime compensation rates of pay for the hours they worked in excess of 40 per week within weekly pay periods during all times material, which overtime hours typically consisted of:

   (a) Being required to work 30 minutes of time before their daily shift began – which

7

daily shifts consisted of eight hours per day, five days per week;

(b) Being required to work after the ending of their daily shifts in case of necessity;

(c) Being required to be "on call" for eight hours per day during their "off days" from work, during which time they had to answer their phones instantly and then immediately report to a rental property with any emergency issues, and address any issues - such as to unlock doors of renters who had been "locked out" of their rented property. Plaintiff and potential plaintiffs simply did not have the freedom to enjoy the normal pleasures of life during such "on call" periods. They could not go to a movie or a play during such "on call" times. They could not go to sports events more than minutes away from the rental properties for which they were responsible for the maintenance thereof. They could not attend family events that occurred more than a few minutes away from the rental properties for which maintenance they were responsible;

(d) More recently, being required to be "on call" seven days a week when not working their respective shifts (except for vacation days) during which time they had to answer their phones instantly and then immediately report to a rental property with any emergency issues, and address any issues - such as to unlock doors of renters who had been "locked out" of their rented property. For example, Plaintiff was "on call" under the same restrictions as noted next above from 5:30 p.m. (after ending his shift) until 8:30 a.m. (at the beginning of his shift) each work day and on "on call" 24 hours per day on weekends; and

(e) Being required to communicate with renters, vendors and management during their "off shift" times and make any minor repairs during such "off shift" hours,

8

typically, consisting of several hours per week.

36. Plaintiff and the potential plaintiffs were not compensated at a rate of one and one-half times their regular hourly rate of pay for all hours worked in excess of forty (40) per work week within weekly pay periods – during all times material.

37. Defendants willfully and with reckless disregard to established FLSA overtime requirements, failed to pay Plaintiff and potential plaintiffs all the overtime compensation owed them at the applicable FLSA overtime compensation rates of pay within weekly pay periods during all times material to this action.

38. Defendants knew and were aware at all relevant times they were failing to pay the proper overtime compensation to Plaintiff and potential plaintiffs, and acted without a good faith basis for such failure.

39. As a result of Defendants' lack of a good faith basis and willful failure to pay Plaintiff and potential plaintiffs in compliance with the overtime requirements of the FLSA, they have suffered lost wages in terms of lost overtime compensation, as well as suffered other damages.

40. The net effect of Defendants' common plan, policy and practice of misclassifying Plaintiff and potential plaintiffs as "exempt" from overtime compensation and failing to pay them their owed overtime compensation was a means to save payroll costs and payroll taxes, all for which they have unjustly enriched themselves and enjoyed ill gained profits at the expense of Plaintiff and potential plaintiffs.

9

## V. MULTI-PLAINTIFF ACTION ALLEGATIONS

41. Plaintiff brings this action on behalf of himself and potential plaintiffs as a multi-plaintiff action pursuant to the FLSA, 29 U.S.C. §§ 206, 207, and 216(b).

42. Plaintiff seeks to send notice to the following group of similarly situated current and former employees of Defendants:

> All current and former employees of Defendants who were classified as property managers and who worked for Defendants anywhere in the United States at any time during the applicable limitations period covered by this Collective Action Complaint (*i.e.* two years for FLSA violations and, three years for willful FLSA violations) up to and including the date of final judgment in this matter, and who are Named Plaintiffs or elect to join this multi-plaintiff action pursuant to the FLSA, 29 U.S.C. § 216(b). (Collectively, "potential plaintiffs").

43. The claims under the FLSA may be pursued by those who join this case under 29 U.S.C. § 216(b).

44. While the exact number of potential plaintiffs is unknown to Plaintiff at this time, and can only be ascertained through applicable discovery, he believes there are more than 100 potential plaintiffs.

45. The claims of Plaintiff are typical of the claims of potential plaintiffs. Plaintiff and potential plaintiffs performed work (or have performed work) for Defendants and were subject to the same operational, compensation and pay plans, policies, and practices, including the failure of Defendants to pay them overtime compensation for all hours worked in excess of forty (40) hours within weekly pay periods during all times relevant to this action.

46. Plaintiff will fairly and adequately protect the interests of potential plaintiffs as his interests are aligned with their interests. Plaintiff has no interests adverse to potential plaintiffs, and


10

Case 3:23-cv-00277-JRG-JEM    Document 1    Filed 08/07/23    Page 10 of 14    PageID #: 10

Plaintiff has retained competent counsel who are experienced in FLSA multi-plaintiff action litigation.

47. The multi-plaintiff action mechanism is superior to the other available methods for a fair and efficient adjudication of the controversy. The expenses, costs, and burden of litigation suffered by individual plaintiffs in a multi-plaintiff action are relatively small in comparison to the expenses, costs, and burden of the litigation of individual actions, making it virtually impossible for plaintiffs to individually seek redress for the wrongs done to them.

48. Plaintiff and potential plaintiffs have suffered and will continue to suffer irreparable damage from the unlawful pay policies, practices, and procedures implemented and administered by Defendants.

49. Defendants are unable to bear its burden of showing that Plaintiff and potential plaintiffs fall within any of the FLSA overtime exemptions, including but not limited to those announced in 29 C.F.R. §§ 541.300, 541.301, 541.302, 541.303, 541.304, or 541.500.

## COUNT I – RECOVERY OF OVERTIME COMPENSATION

50. The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

51. Plaintiff and potential plaintiffs were misclassified by Defendant as overtime-exempt employees, and as previously addressed.

52. Plaintiff and potential plaintiffs were/are not exempt from overtime compensation, as previously addressed.

53. During their employment with Defendants, Plaintiff and potential plaintiffs worked more than forty (40) hours per week within weekly pay periods but were not paid overtime compensation for such overtime work time as required by the FLSA, as previously described.

54. Defendants did not have a good faith basis for misclassifying Plaintiff and potential plaintiffs as exempt from overtime compensation and Defendants are unable to bear their burden of demonstrating that Plaintiff and potential plaintiffs fall within any of the FLSA overtime exemptions.

55. Defendants' failure to pay Plaintiff and potential plaintiffs one and one-half times the proper regular hourly rate of pay for all hours worked in excess of forty (40) per week within weekly pay periods during all times material was willful and with reckless disregard to established FLSA overtime compensation requirements.

56. Defendants do not have a good faith basis for failing to pay Plaintiff and potential plaintiff and potential plaintiffs the overtime compensation they have earned.

57. As a result of Defendants' willful and unlawful acts of failing to pay Plaintiff and potential plaintiffs earned overtime compensation, they have suffered lost wages and other damages.

58. The unpaid overtime claims of Plaintiff and potential plaintiffs are unified through a common theory of Defendants' FLSA violations.

59. As a result of Defendants' willful violation of the FLSA and a lack of a good faith basis for its violations, Plaintiff and potential plaintiffs are entitled to unpaid overtime compensation, liquidated damages, attorney fees and other costs and expenses related to this action.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, individually and on behalf of himself and all other similarly situated potential plaintiffs, demand judgment, jointly and severally, against Defendants and request this Court grant the following relief:

A. Promptly issue notices pursuant to 29 U.S.C. § 216(b), apprising potential plaintiffs pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consents to join under 29 U.S.C. § 216(b);

B. An award of compensation for unpaid overtime to Plaintiff and potential plaintiffs;

C. An award of liquidated damages to Plaintiffs and potential plaintiffs;

D. An award of prejudgment interest (to the extent liquidated damages are not awarded) and post-judgment interest at the applicable legal rate to Plaintiff and potential plaintiffs;

E. An award of costs, expenses, and disbursements relating to this action together with reasonable attorneys' fees and expert fees to Plaintiff and potential plaintiffs;

F. A ruling that the three-year statutory period for willful violations under the FLSA shall apply in this action;

G. A Declaration that Plaintiff and potential plaintiffs were misclassified as exempt and entitled to unpaid overtime damages to be proven at trial;

H. A Declaration that Defendant willfully violated the FLSA; and

I. Such other general and specific relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a **TRIAL BY JURY** on all issues so triable.

Dated: August 7th 2023.                              Respectfully Submitted,

*s/J. Russ Bryant*
Gordon E. Jackson (TN BPR #8323)
J. Russ Bryant (TN BPR #33830)
James L. Holt, Jr. (TN BPR #12123)
J. Joseph Leatherwood IV (TN BPR #39490)

**JACKSON, SHIELDS, YEISER, HOLT OWEN & BRYANT**
Attorneys at Law
262 German Oak Drive
Memphis, Tennessee 38018
Telephone: (901) 754-8001
Facsimile: (901) 754-8524
*gjackson@jsyc.com*
*rbryant@jsyc.com*
*jholt@jsyc.com*
*jleatherwood@jsyc.com*


*ATTORNEYS FOR PLAINTIFF AND FOR OTHERS SIMILARLY SITUATED*